# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

## Case No. 23-12536

---

## TERESA BOYD,
### Plaintiff-Appellant,

### vs.

## LOUIS DEJOY, in his official capacity as
## UNITED STATES POSTMASTER GENERAL,
### Defendant-Appellee.

---

## BRIEF OF DEFENDANT-APPELLEE

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## HONORABLE ALLEN C. WINSOR
## (4:21-CV-00234-AW-MAF)

---

**JASON R. COODY**
**United States Attorney**

*/s/ Herbert S. Lindsey*
**HERBERT S. LINDSEY**
**Assistant United States Attorney**
**Texas Bar No. 00784476**
**111 North Adams Street, 4th Floor**
**Tallahassee, FL  32301**
**Telephone:  850-942-8430**
**Fax:  850-942-8466**
**Email:  herbert.lindsey@usdoj.gov**
**Counsel for Defendant/Appellee**

ECCA No.:  23-12536-f

D.C. No.:  4:21-cv-00234-AW-MAF

*Teresa Boyd v. Louis DeJoy,*
*United States Postmaster General*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

BOYD, TERESA, PLAINTIFF/APPELLANT

COODY, JASON R., UNITED STATES ATTORNEY

DEJOY, LOUIS, UNITED STATES POSTMASTER GENERAL;
DEFENDANT/APPELLEE

FITZPATRICK, MARTIN A., UNITED STATES MAGISTRATE JUDGE

LINDSEY, HERBERT S., ASSISTANT UNITED STATES ATTORNEY
COUNSEL FOR DEFENDANT/APPELLEE

MATTOX, MARIE A., ATTORNEY FOR PLAINTIFF/APPELLANT

RICHARDSON, ASHLEY N., ATTORNEY FOR PLAINTIFF/APPELLANT

WINSOR, ALLEN C., UNITED STATES DISTRICT JUDGE


I HEREBY CERTIFY that the above constitutes a complete list of interested persons to this appeal as described in the Rules of the United States Court of Appeals for the Eleventh Circuit Rev. (12/01/2023), 11th Cir. R. 28-1(b) and 11th Cir. R. 26.1-1.

*/s/ Herbert S. Lindsey*
**HERBERT S. LINDSEY**
Assistant United States Attorney

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The government believes that the issues and arguments are adequately addressed in the briefs, and therefore does not request oral argument.

# <u>TABLE OF CONTENTS</u>

<u>PAGE(S)</u>

CERTIFICATE OF INTERESTED PERSONS ........................................... C-1 of 1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CONTENTS.................................................................... ii, iii

TABLE OF CITATIONS ...............................................................iv-viii

TABLE OF RECORD REFERENCES ............................................... ix-x

STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES
......................................................................................................xi

STATEMENT OF JURISDICTION........................................................ xii

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE.......................................................... 2-16

    (i)    Course of Proceedings and Dispositions in the Court Below ........... 2-8

    (ii)    Statement of Facts ......................................................... 8-15

    (iii)    Standards of Review.................................................... 15-16

SUMMARY OF THE ARGUMENT ....................................................17

ARGUMENT AND CITATIONS OF AUTHORITY ...................................... 18-55

**I.**    THE DISTRICT COURT PROPERLY GRANTED SUMMARY
    JUDGMENT FOR THE UNITED STATES POSTAL SERVICE ON
    BOYD'S RACE, SEX, AND AGE DISCRIMINATION CLAIMS. .... 18-22

**II.**    THE DISTRICT COURT PROPERLY RULED GRANTED SUMMARY
    JUDGMENT FOR THE UNITED STATES POSTAL SERVICE ON
    BOYD'S DISABILITY DISCRIMINATION CLAIM. ........................ 23-34

**III.** THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT FOR THE UNITED STATES POSTAL SERVICE ON BOYD'S RETALIATION CLAIMS. ...................................................... 35-55

    A. Boyd failed to administratively exhaust several of her retaliation claims. ..................................................................................... 35-43

    B. Boyd was not subject to retaliation. ........................................ 43-55

CONCLUSION ....................................................................................... 55

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)(7) ............................. 56

CERTIFICATE OF SERVICE ................................................................. 56

# <u>TABLE OF CITATIONS</u>

<u>CASES</u>:                                                                          <u>PAGE(S)</u>

*Abram v. Fulton Cty*., Gov't, 598 F. App'x 672, 676 (11th Cir. 2015)...................39

*Access Now, Inc. v. Sw. Airlines Co*., 385 F.3d 1324, 1331 (11th Cir. 2004).........18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) .............................16

*Babb v. Secretary, Dep't of Veterans Affairs* (*Babb II*), 992 F.3d 1193
(11th Cir. 2021)....................................................................................................20

*Babb v. Wilkie* (*Babb I*), 140 S. Ct. 1168, 1174 (2020)...................................... 20, 44

*Basel v. Sec'y of Defense*, 507 F. App'x. 873, 876 (11th Cir. 2013).......................37

*Bell v. Sec'y of Dep't of Veterans Affs*., No. 22-12698, 2024 WL 1462405, at *4
(11th Cir. Apr. 4, 2024) .......................................................................................21

*Brown v. Snow*, 440 F.3d 1259, 1262 (11th Cir. 2006) ...........................................36

*Buckley v. Sec'y of Army*, 97 F.4th 784 (11th Cir. 2024) ........................................20

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) .....................44

*Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009)........................................19

*Clover v. Total Sys. Servs. Inc., 176 F.3d 1346 (11 th Cir. 1999)* .........................45

*Curry v. Secretary, Dept. of Veterans Affairs*, 2013 WL 2161791, at *4 (11th Cir.
May 21, 2013)......................................................................................................25

*Davis v. Legal Svcs. of Alabama, Inc.*, 19 F.4th 1261, 1266-67 (11th Cir. 2021)
.............................................................................................................................50

*Debe v. State Farm Mut. Auto. Ins. Co*., 860 F. App'x 637, 640 (11 th Cir. 2021)
.............................................................................................................................45

*Duncan v. Alabama,* 734 F. App'x 637, 641 (11th Cir. 2018) ...............................45

*Durbrow v. Cobb Cnty. Sch. Dist.*, 887 F.3d 1182, 1186 n. 1 (11th Cir. 2018)......23

*Durr v. Sec'y of Veterans Affairs*, No. 21-12867 (11th Cir. 2022) .................. 16, 45

*Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) ...............................28

*Earl v. Mervyns, Inc.,* 207 F.3d 1361, 1367 (11th Cir. 2000) ...............................30

*EEO v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11 th Cir. 2000).................46

*Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).........................................24

*Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016) ................... 31, 32, 34

*Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir.1999)
.......................................................................................................... 29, 30, 33

*Goldberg v. Fla. Int's Univ.*, 838 F. App'x 487, 492 (11th Cir. 2020) ........... 23, 24

*Green v. Union Foundry Co.*, 281 F.3d 1229, 1233 (11th Cir. 2002)....................37

*Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) ...........
.......................................................................................................... 16, 36, 37

*Grier v. Sec'y of the Army,* 799 F.2d 721, 724 (11th Cir. 1986) ...........................36

*Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1528 (11th Cir. 1997) .................28

*Howard v. Walgreen Co.*, 605 F.3d 1239, 1245
 (11th Cir. 2010).....................................................................................53

*Johnson v. Bd. of Regents,* 263 F.3d 1234, 1264 (11th Cir. 2001)........................19

*Kassa v. Synovus Fin. Corp.*, 800 F. App'x 804, 809 (11th Cir. 2020) .................31

*Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir, 2012) ............. 16, 35

*Lanza v. Postmaster Gen. of U.S.*, 570 F. App'x 236, 240 (3rd Cir. 2014) ..... 19, 54

*Lewis v. City of Union City* (*Lewis I*), 934 F.3d 1169, 1227 (11th Cir. 2019) ........21

*Lewis v. City of Union City* (Lewis II), 934 F.3d 1169, 1185-86 (11th Cir. 2019) .22

*Lucas v. W.W. Grainger, Inc.* 257 F.3d 1249, 1255 (11th Cir. 2001) ... 24, 27, 29 30

*Malone v. U.S. Att'y Gen.*, 858 Fed. App'x. 296 (11th Cir. 2021) .........................16

*Mason v. United Parcel Service Co. Inc.,* 674 F. Appx. 943, 951 (11th Cir. 2017) ................................................................................................................................25

*McCarroll v. Somerby of Mobile, LLC*, 595 F. App'x. 897, 899 (11th Cir. 2014) ..... .......................................................................................................................... 23, 29

*McKane v. UBS Fin. Servs., Inc.*, 363 F. App'x 679, 681 (11th Cir. 2010) ............31

*Mervyns, Inc*., at 1376 ...........................................................................................28

*Miller-Godwin v. City of Panama City Beach, Fla.*, 385 F. App'x 966, 974 (11th Cir. 2010) ..............................................................................................................44

*Monaghan v. Worldpay US, Inc*., 955 F.3d 8555, 860 (11th Cir. 2020) ...............20

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ........................38

*Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001)......... 19, 54

*Perdue v. Alabama Dept. of Pub. Safety,* No. 2:11-cv-1005, 2013 WL 4567010, *11 (M.D. Ala. Aug. 6, 2013)..............................................................................25

*Porterfield v. Soc. Sec. Admin*., No. 20-10538, 2021 WL 3856035, at *4 (11th Cir. Aug. 30, 2021) ..............................................................................................23

*Rainey v. Holder*, 412 F. App'x 235, 238 (11th Cir. 2011).....................................52

Rehabilitation Act ....................................................................................................25

*Riccard v. Prudential Ins. Co*., 307 F.3d 1277, 1291-92 (11th Cir. 2002).............38

*Roddy v. City of Villa Rica, Ga.*, 536 F. App'x 995, 1000 (11th Cir. 2013)...........29

*Rueda-Rojas v. United States*, 477 F. App'x 636, 637-38 (11th Cir. 2012)............16

Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11 th Cir. 2014) .........19

*Schwertfager v. City of Boyton Beach*, 42 F. Supp. 2d 1347, 1363 (S.D. Fla. 1999) ........................................................................................................................25

*Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).........45

*Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008)......................................38

*Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321, 1328, 1341-46 (11th Cir. 2011)..........................................................................................................22

*Spears v. Creel*, 607 F. App'x 943, 948 (11th Cir. 2015) ......................................30

*Sutton v. Lader, 185* F.3d 1203, 1211 (11th Cir. 1999).................................... 27, 30

*Terhume v. Potter*, No. 8:08-CV-1218-T-23MAP, 2009 WL 2382281, at *4 (M.D. Fla. July 31, 2009) ...............................................................................................38

*Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir. 1998) ................................. 27, 30, 33

*Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1363 (11th Cir. 2007)........ 44, 51

*Tonkyro v. Sec'y, Dep't of Veteran Affs*., 995 F.3d 828, 833-35 (11th Cir. 2021)..44

*Twitty v. Potter*, No. 4:07CV107-SPM/WCS, 2008 WL 2277528, at *3 (N.D. Fla. May 30, 2008)........................................................................................................38

*United States v. Almedina*, 686 F.3d 1312, 1316, n.1 (11th Cir. 2012)...................21

*Vincent v. Wells Fargo Guard Services, Inc.*, 3 F.Supp.2d 1405, 1416 (S.D. Fla. 1998) ......................................................................................................................26

*Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, (11th Cir. 2002) ..............................15

*Willis v. Conopco, Inc.,* 108 F.3d 282, 283 (11th Cir. 1997) ..................................29

## *OTHER AUTHORITIES:*

29 U.S.C. § 621 ...................................................................................2

29 U.S.C. § 794 ............................................................................ 2, 23

42 U.S.C. § 12101 .............................................................................24

42 U.S.C. § 12111 ........................................................................ 24, 25

42 U.S.C. § 1981 .................................................................................2

42 U.S.C. § 2000e ...............................................................................2

261 F.3d 1262, 1267 (11th Cir. 2001) ...................................................19

Title VII of the Civil Rights Act of 1964..........................................passim

## **RULES:**

11th Cir. R. 26.1-1 ............................................................................. ii

11th Cir. R. 28-1(b)............................................................................ ii

11th Cir. R. 36-2 ...............................................................................21

*29 C.F.R.* ................................................................................... 36, 37

Fed. R. Civ. P. 56(a)...........................................................................16

## **TABLE OF RECORD REFERENCES IN THE BRIEF**

| ECF No. | Document Title | Page Nos. In Brief |
|---------|----------------|--------------------|
| 1 | Complaint | 2 |
| 5 | Answer to Complaint | 2 |
| 14 | USPS Notice of Filing Exhibits in Support of Motion for Summary Judgment | *passim* |
| 15 | USPS Motion for Summary Judgment | 2 |
| 16 | USPS Motion to Extend Word Count | 2 |
| 17 | Order on Motion to Extend Word Count | 2 |
| 18 | USPS Amended Motion for Summary Judgment | 3 |
| 19 | Boyd's Motion for Extension of Time to File Response | 3 |
| 20 | Order Granting Motion for Extension | 3 |
| 21 | Boyd's Consented Motion for Extension to File Response to USPS's Motion for Summary Judgment | 3 |
| 22 | Order Granting Motion for Extension | 3 |
| 24 | Boyd's Response in Opposition to Amended Motion for Summary Judgment | 3 |
| 25 | USPS's Reply to Boyd's Response in Opposition to USPS's Motion for Summary Judgment | 3 |
| 32 | Civil Minutes – Hearing on Motion for Summary Judgment | 3 |
| 34 | Transcript of Motion Hearing | 5 |
| 36 | Order Granting Summary Judgment in part | *passim* |

37          Boyd's Notice of Compliance with Order ..........................7, 35, 36, 54

39          USPS Motion for Summary Judgment on Retaliation ...................7, 35

40          Boyd's Response to USPS Motion for Summary Judgment ...............7

41          USPS Reply to Boyd's Response in Opposition to USPS Motion for Summary Judgment....................................................................................7

42          Order Granting Summary Judgment ....................................................7

43          Judgment ...............................................................................................7

45          Notice of Appeal ..................................................................................8

## STATEMENT REGARDING ADOPTION OF
## BRIEFS OF OTHER PARTIES

There are no briefs adopted from other parties.

## STATEMENT OF JURISDICTION

On August 3, 2023, Boyd filed her notice of appeal [ECF No. 45], appealing the District Court's Order [ECF No. 36 and 42] granting the United States Postal Service's motion for summary judgment.  Pursuant to 28 U.S.C. § 1291, the Court of Appeals has jurisdiction of appeals from all final decisions of the district courts of the United States except where a direct review may be had in the Supreme Court.

## <u>STATEMENT OF THE ISSUES</u>

**ISSUE I:**  WHETHER THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT FOR THE UNITED STATES POSTAL SERVICE ON BOYD'S RACE, SEX, AND AGE DISCRIMINATION CLAIMS.

**ISSUE II:**  WHETHER THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT FOR THE UNITED STATES POSTAL SERVICE ON BOYD'S DISABILITY DISCRIMINATION CLAIM.

**ISSUE III:**  WHETHER THE DISTRICT COURT PROPERLY GANTED SUMMARY JUDGMENT FOR THE UNITED STATES POSTAL SERVICE ON BOYD'S RETALIATION CLAIMS.

## <u>STATEMENT OF THE CASE</u>

**(i)**    **<u>Course of Proceedings and Dispositions in the Court Below</u>**

Appellant, Teresa Boyd (Boyd), filed her initial Complaint below on June 4, 2021. (ECF 1). Boyd sued the United States Postal Service (Postal Service) under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, the Rehabilitation Act, codified at 29 U.S.C. § 794 et seq and 42 U.S.C. § 1981a, and the Age Discrimination in Employment Act (ADEA), codified at 29 U.S.C. §621 et seq. (*Id.* ¶ 1). Boyd brought four claims: (1) Race Discrimination under 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981a;[1] (2) Violation of the Rehabilitation Act Disability/Handicap Discrimination under 29 U.S.C. § 794, and (3) Age Discrimination under 29 U.S.C. §621 et seq., and (4) Retaliation under 42 U.S.C. § 2000e et seq. (Id. at 19-26). The Postal Service answered the complaint on August 13, 2021. (ECF 5).

On May 4, 2022, the Postal Service moved for summary judgment. (ECF 15xxxx). The Postal Service filed an unopposed motion to exceed the word count. (ECF 16). The court denied the unopposed motion to exceed the word count and gave the Postal Service seven days to file an amended motion and Boyd 21 days to respond. (ECF 17). On May 11, 2022, the Postal Service filed its amended motion

---

[1] Boyd's Complaint never specifically pled sex discrimination and only mentions sex discrimination only once in passing (ECF No. 1 paragraphs 8, 60-70). But the district court construed her Complaint to raise sex discrimination claims, (ECF No. 36), and Boyd references sex discrimination in her appellate brief. Therefore, the Postal Service will address these claims.

for summary judgment. (ECF 18). Boyd filed two unopposed motions for enlargement of time to respond to the Postal Service's motion for summary judgment, which the court granted. (ECF Nos 19, 20, 21, and 22). On June 10, 2022, Boyd filed her response in opposition to the Postal Service's motion for summary judgment. (ECF 24). On June 17, 2022, the Postal Service filed its reply. (ECF 25).

On August 26, 2022, the district court held a hearing was held on the Postal Service's motion for summary judgment. (ECF 32). On March 31, 2023, the court granted the motion on Boyd's race, sex, age, and disability discrimination claims, but denied the motion without prejudice as to her retaliation claim. (ECF No. 36). Before reaching the merits, the court emphasized a recurring issue (which is still an issue on appeal) with Boyd's briefing:

> "One problem in this case—and frequently present in other employment cases—is that the plaintiff's presentation of the facts does not clearly set out which facts go with which claims. Boyd's response includes a lengthy "Statement of Disputed Facts," including many facts that are clearly undisputed, as well as many facts that have no obvious connection to any specific claim. Worse, Boyd's opposition does not even make clear what her specific claims are—what adverse actions she contends matched which unlawful activity. With claims based on sex, race, age, disability, and retaliation, it is particularly important that the claims—and the evidence pertaining to each—be made clear. That did not happen in this case, and that has complicated the court's review." (ECF 36 at 2).

The court also stated: "[i]n addition, Boyd in many instances simply string cited to the record without elaborating as the point she was making or how it fit into

any particular argument." (Id.) The court gave as an example the bottom of response's page nine, where Boyd offer that "Defendant has multiple people who are white, male and/or younger thsp.) at 9 (citing "[23-13, paragraph 61; 23-14, p. 31, 109-110; 23-15, p. 17-20; 23-20, p. 5-15; 23-21, p. 5-7; 23-22, p. 5-15, 21-23; 23-18, p.13-14; 23-24, p.49, 51, 56, 59-60; 23-23, p. 6-15]") But it should not be left to the court to develop some argument based on that citation." (Id.). The court further explained that it, "would expect a plaintiff to lay out clearly in her brief that— to suppose one example—she was discriminated against based on race (or another specific protected characteristic) when the employer terminated her (or took another specific adverse action) and that the record supports the claim based on evidence that the brief specifically details and cites. Instead, in this case and others, we are left with a smattering of facts and a hope that something might stick." (Ide.).

Turning to the substance of Boyd's claims, the Postal Service argued that her claim that the Agency did not allow her to work from October 26, 2019, through February 11, 2020, and that from February 11, 2020, the Agency only allowed her to work 1.5 hours a day should be dismissed for failure to exhaust administrative remedies because she already appealed this to the MSPB. The Postal Service also contended that this claim and her remaining discrimination and retaliation claims should be dismissed on the merits. The court declined to dismiss for lack of

4

exhaustion but concluded that the Postal Service was entitled to summary judgment on all her discrimination claims. (Id).

While Boyd alleged a myriad of adverse actions in her opposition to the Postal Service's motion for summary judgment, at the hearing she limited her challenged adverse action for her race, sex, and age discrimination claims (Counts I and II) to the Postal Service's refusal to give her a limited duty work assignment from 2016 to the present (except for 1.5 hours per day she is now allowed to work).   (ECF 36 at 8; ECF 34 (August 26, 2022 Hearing) at 27:24-28:9).  The court found no evidence from which a jury could conclude that the Postal Service's refusal to provide Boyd a limited duty work assignment was based on race, sex, and age.  (Id)

*Figure 1*

. at 9).  As for Boyd's disability discrimination claim (Count II), the court found that Boyd could not perform an essential function of her position—driving a postal vehicle—and had not proposed a reasonable accommodation by requesting another employee perform her job when she was unable to do so due to flare-ups. (Id. at 9-11).  The court further explained that the Postal Service was entitled to summary judgment on this claim for an independent reason in that Boyd could not point to evidence that she ever informed her supervisors that her flare-ups were rare or she could feel in advance when flare-ups would occur.  (Id. at 11).  The medical documentation she provided was ambiguous and never clearly indicated how much

driving she could do. (Id.). And to the extent Boyd separately contended that the Postal Service refused a reasonable accommodation by not finding a substitute full-time position, the court rejected that argument too because Boyd did not point to evidence that she ever requested such an accommodation, nor did she show that creating a new position would be a reasonable accommodation. (Id. at 12).

Concerning Count IV (Retaliation), the court found that "Boyd disclaimed any reliance on the *McDonnell Douglas* burden-shifting framework, but she offered a '"pretext"' section of her brief, relying on cases applying that framework." (ECF 36 at 13). The court noted that the "bigger issue, though, [was] that her claims lack any specificity. …her retaliation section include[d] no record citations. And although she identifie[d] a '"notice of removal,"' she otherwise simply [stated] she '"was subjected to harassment, verbal abuse, discipline and termination."' (Id.). But rather than dismissing Boyd's retaliation claims, the court gave Boyd another opportunity to clarify them, providing 14 days to file a notice laying out each adverse action upon which she based her retaliation claim and the protected activity for which she contended that adverse action constituted retaliation. (Id.). The court permitted the Postal Service to file a new summary-judgment motion within 21 days and provided Boyd 21 days to respond and the Postal Service 7 days after that to file a reply. (Id. at 13-14).

On April 13, 2023, Boyd filed a notice of compliance with the court's March 31, 2023 Order wherein she provided the protected activity and the adverse action upon which she based her retaliation claims. (ECF 37).  On May 4, 2023, the Postal Service filed a motion for summary judgment on Boyd's retaliation claims. (ECF 39).  On May 25, 2023, Boyd filed her response in opposition to the Postal Service's motion for summary judgment.  (ECF 40).  On June 1, 2023, the Postal Service filed a reply to Boyd's response.  (ECF 41).  On July 5, 2023, the court granted the Postal Service's summary judgment motion.  (ECF 42).  The court concluded that while Boyd offered only speculation to connect her protected expressions to any of the incidents she deemed retaliatory. (Id. at 5).  The court reasoned that Boyd's initial EEO contact on October 25, 2019 could not have played a role in her August 2019 emergency placement or her October 22, 2019 emergency placement because both came earlier. (Id.)  And Boyd did not cite any evidence connecting her earlier EEO complaints to these or any other actions she asserted were retaliatory. (Id. at6)  The court likewise found that Boyd did not show that her initial EEO contact played a role in Morrison's refusal to complete fact-finding as she did not show that her supervisors were aware of her EEO contact.  (id.)  While Boyd did point to evidence that Morrison was aware of her EEO contact, she did not point to any evidence this awareness played a role in her access denial for the December 2019 union meeting.  (id. at 6-7)  Next for Boyd's

7

claim that the Postal Service only allowed her to work 1.5 hours a day, the court reasoned that her later-filed EEO complaint could not have played a role in this. (Id. at 7).  And she did not point to any evidence that initial EEOC contact played a role beyond temporal proximity which alone was insufficient as the offer occurred three months after her initial EEO contact.  (Id.).  The court further determined that Boyd did not show her November 2019 or February 2020 EEO contact or prior complaints from 2017 played a role in her May 2020 interactions with Steel and Cobb.  (Id. at 7-8).  Finally, the court found that Boyd presented no evidence that her amending the EEO complaint played a role in her notice of removal, the order to leave when her shift ends, her ban from other USPS facilities, or her interactions with Postmaster Miller in November 2020.  (Id. at 8).

Afterwards, the court issued its judgment.  (ECF 43).  Boyd now appeals the district court's judgment.  (ECF 45).

### (ii)    Statement of the Facts

Boyd has been employed with the Postal Service since 1998.  (ECF 14-9: Plaintiff's Form 50; ECF 14-1: Plaintiff's Depo P9 L16-18).  On February 2, 2015, Boyd injured her neck.  (ECF 14-2: Plaintiff's Depo P171 L7-17).  Boyd had an Office of Worker's Compensation (OWCP) case for the neck injury, case number ending 0987.  (ECF 14-2: Plaintiff's Depo P171 L7-17, P172 L2-10).  Boyd also had an OWCP case for a hand injury that occurred on October 25, 2016.  (ECF 14-2:

Plaintiff's Depo P172 L2-10).  At the time Boyd filed her federal lawsuit she was the National Association of Letter Carriers local Union President.  (ECF 14-1: Plaintiff's Depo P16 L5-10).  Boyd was employed at the Lake Jackson Postal Station as a Carrier Technician during the time of the events that form the basis of her federal lawsuit.  (ECF 14-9: Plaintiff's Form 50; ECF 14-7: Morrison Declaration).  An essential function of a Carrier Technician is to deliver mail.  (ECF 14-7: Morrison Declaration; ECF 14-32: Plaintiff's Position Description).  For Boyd to perform her full duties as a Carrier Technician, she must drive a mail truck and deliver mail. (ECF 14-3: Plaintiff's Depo P27 L10-13; ECF 14-7 Morrison Decl).

On October 22, 2019, Plaintiff was placed on Emergency Placement for her conduct.  (ECF 14-7: Morrison Declaration; ECF 14-15: Fiveash Statement; ECF 14-17: Kulik's Statement; ECF 14-18: October 22, 2019, Emergency Placement). On October 22, 2019, Wesley Fiveash and Michelle Kulik were at Lake Jackson Postal Station conducting a route inspection and witnessed Plaintiff's behavior. (ECF 14-15: G-Fiveash Statement; ECF: Kulik Statement). On November 14, 2019, Plaintiff received a 14-Day No Time-Off Suspension based on the October 22, 2019, Emergency Placement.  (ECF 14-1: Plaintiff's Depo P66 L15-25, P67 L1-2; ECF 14-24: No time-off suspension).

Boyd submitted a CA-17 (Duty Status Report) to Postal Service dated August 23, 2019, under OWCP case 0987 with Box #13 checked "no" – Box 13 reads--

9

"Employee able to perform regular work described on Side A." (ECF 14-37: CA17). Boyd submitted another CA-17, dated August 23, 2019, to the Postal Service under OWCP case 0987 with Box #13 checked "no", with the following written: "Will require more time than usual to complete mail delivery route. Will have occasional flare-ups of her neck problems such that she will not be able to turn her head and so will be unable to drive during the flare-ups that usual last a few days. Lifting should be limited to intermittent 15lbs." (signed by Dr. Richard Blecha). (ECF 14-38: CA17). Boyd also submitted a letter from Dr. Blecha concerning an August 23, 2019 office visit, stating "[Plaintiff] will require more time than usual to complete mail delivery route. She will have occasional flare-ups of her neck problem such that she will not be able to turn her head and she will not be unable to drive during that time. Her flare-ups last a few days. Lifting should be limited to Intermittent of 15 lbs*.*" (ECF 14-39: August 23, 2019 Office Visit). Boyd submitted a CA-17 to the Postal Service under OWCP case number 0987 dated November 1, 2019, that had box #13 checked "no," signed by an APRN from Dr. Blecha's office, and stated see accompanying letter. (ECF 14-40: CA17). The accompanying letter concerned a November 1, 2019, office visit: "The follow [sic] restrictions are valid per her condition. Mrs. Boyd will require more time than usual to complete mail delivery route. She will have occasional flare-ups of her neck problem, such that she will not be able to turn her head and she will not be unable to drive during the time. Her

flare-ups last a few days.  She is unable to drive a postal vehicle [sic].  Lifting should be limited to Intermittent of 15 lbs." (ECF 14-4: November 1, 2019 Office Visit).  Boyd submitted a CA-17 to the Postal Service under OWCP case number 0987 dated January 29, 2020, with box #13 not checked (signed by Dr. Blecha).  (ECF 14-6: CA17).  Boyd submitted a letter concerning a January 29, 2020, office visit by to see Dr. Blecha:  "Mrs. Boyd will require more time than usual to complete mail delivery route.  She will have occasional flare-ups of her neck problem, such that she will not be able to turn her head and she will not be unable to drive during that time.  Her flare-ups last a few days.  Lifting should be limited to Intermittent of 15 lbs." (ECF 14-8: January29, 2020 Office Visit).  Boyd submitted a CA-17 to the Postal Service under OWCP case number 0987 dated February 12, 2020.  Box #12 and Box #13 are not checked:  "Mrs. Boyd will/might require more time than usual to complete mail delivery route.  She will have occasional flare-up of her neck problem, such that she will not be able to turn her head and she will not be able to drive during the time.  Her flare-ups last a few days.  She is unable to drive a postal vehicle.  She is able to work 8 plus hours lifting should be limited to intermittent of 25 lbs." (ECF 14-10: CA17).  Boyd submitted another CA-17 dated February 12, 2020, under OWCP case number 0987 that had Box #13 checked "no."  (signed by an APRN).  (ECF 14-12: CA17).  On February 11, 2020, Boyd agreed to and signed a modified job assignment of 1.5 hours of work per day. (Ex.38-9 Modified Job

Assignment).  Boyd submitted a Duty Status Report (CA-17) to Postal Service under OWCP case number 0987 dated February 12, 2020. The CA-17 stated: "Mrs. Boyd will/might require more time than usual to complete mail delivery route. She will have occasional flare-up of her neck problem, such that she will not be able to turn her head and she will not be able to drive during the time. Her flare-ups last a few days. She is unable to drive a postal vehicle. She is able to work 8 plus hours lifting should be limited to intermittent of 25lbs."  (Ex.38-24 Duty Status Report February 12, 2020).

On or around October 26, 2019, Boyd was informed that there was no work available for her within her medical restrictions.  (ECF 14-7: Morrison Declaration; ECF 14-5: Staley Declaration).  Boyd then went on OWCP leave from on or around October 26, 2019 to February 11, 2020.  (ECF 14-2: Plaintiff's Depo P197 L10-25; ECF 14-7: Morrison Declaration).  Because Boyd was on OWCP leave during that time, OWCP should have compensated Boyd.  (ECF 14-2: Plaintiff's Depo P198 L1-7, P201 L8-19; ECF 14-7: Morrison Declaration).  On February 11, 2020, Boyd agreed to a modified job assignment of 1.5 hours per day.  (ECF 14-14: Modified Job Assignment).  Boyd claims that the accommodation she requested was to return to full duties.  (ECF 14-3: Plaintiff's Depo P11 L1-12, P21 L19-21).  Boyd claims that she cannot perform 3% of her duties because of a lifting restriction.  (ECF 14-

2: Plaintiff's Depo P174 L1-25, P175 L1-13; ECF 14-31: Plaintiff's May 10, 2021 Letter to DRAC).

On May 15, 2020, at Lake Jackson Postal Station Paul Steele, Manager of Post Office Operations, observed Boyd leaning over into a vehicle talking while blocking the customer parking lot exit, causing customers to drive around Boyd to exit the lot. When Steele attempted to talk to Boyd about this and where she parked her vehicle, Boyd told him not to talk to her, that she was off the clock, and that she did not have to listen to Steele.    (ECF 14-1: Plaintiff's Depo P102 L5-25, P104 L10-25, P105 L4-16). This exchange was witnessed by Postal Service employee Brian Wolfgeher, who had called Steele regarding Boyd in the customer parking lot and the fact that vehicles exiting the customer parking lot had to drive around Boyd. (ECF 14-26: Wolfgeher statement, ECF 14-1: Plaintiff's Depo P102 L1-19, P104 L7-25, P105 L1-14). Boyd was not disciplined or placed on Emergency Placement resulting from the May 15 incident. (ECF 14-1: Plaintiff's Depo P107 L18-22). On May 21, 2020, Boyd's conduct towards Acting Lake Jackson Station Manager Vanessa Cobb when she talked to Boyd about parking in the customer parking lot instead of the employee lot resulted in Boyd being placed on Emergency Placement on May 22, 2020. (ECF 14-20: Cobb statement; ECF 14-19: Ratley Statement; ECF 14-21: May 22, 2020 Emergency Placement; ECF 14-25: Steele statement). Paul Steele and Acting Lake Jackson Station Manager Sammayya Ratley witnessed the May 21 incident. (Id.).

13

On July 13, 2020, Boyd received a Notice of Removal for insubordination, improper conduct, and failure to follow instructions stemming from the May 2020 Emergency Placement. Lake Jackson Postal Station Manager Edward Miller initiated the Notice. (ECF 14-2: Plaintiff's Depo P145 L5-25; ECF 14-22: Notice of Removal).

The Postal Service District Reasonable Accommodation Committee (DRAC) interacts with employees to determine accommodations. (ECF 14-28: February 18, 2021 DRAC Letter to Plaintiff). Boyd has been familiar with the DRAC since 2008. (ECF 14-2: Plaintiff's Depo P172 L11-25). Boyd stated that she knows the DRAC is voluntary and that she never needed them to do her job. (ECF 14-2: Plaintiff's Depo P173 L7-23). In a letter to her dated February 18, 2021, the DRAC explained what it is and requested that Boyd work with it. Boyd did not respond. (ECF 14-2: Plaintiff's Depo P175 L14-18; ECF 14-28: February 18, 2021 DRAC letter to Boyd). Because she did not respond, the DRAC sent Boyd a second letter dated March 8, 2021. (ECF 14-2: Plaintiff's Depo P175 L14-18; ECF 14-29: March 8, 2021 DRAC letter to Boyd). Because Boyd still did not respond, the DRAC sent Plaintiff another letter dated March 22, 2021. (ECF 14-2: Plaintiff's Depo P175 L14-18; ECF 14-*30:* March 22, 2021 DRAC letter to Plaintiff). Boyd wrote the DRAC on May 10, 2021, stating: "Thank you for your letter, literature, and application that you send me that I did not request If I ever fill that I need DRAC I know how to request it." (ECF 14-

2: Plaintiff's Depo P176 L1-12; ECF 14-31Plaintiff's May 10, 2021 Letter to DRAC).

Boyd never claimed in her EEO Administrative Complaint (1) that she was subjected to retaliation on August 29, 2019; (2) that she was subjected to retaliation on October 22, 2019; (3) that she was subjected to retaliation on October 26, 2019; (4) that she was subjected to retaliation on November 14, 2019; (5) that she was subjected to retaliation on December 12, 2019; (6) that Matthew Staley retaliated against her by threatening to call the police on her; (7) that she was subjected to retaliation when she allegedly became physically ill because of harassment and verbal abuse and that Vanessa Cobb demanded that she bring medical documentation before returning to work; and (8) that she was subjected to retaliation when (on unspecified date(s) she was allegedly "ordered from the station as soon as her shift ended," that she was "banned from entering any other post office in Tallahassee" by the Postmaster.  (Ex. 38-5 Acknowledgement of 6th Amendment to Complaint; Ex. 38-6 EEO Disputer Resolution Specialist Inquiry Report; Ex. 38-11 Plaintiff's EEO Complaint of Discrimination).

### (ii)    <u>Standards of Review</u>

A district court's grant or denial of summary judgment is reviewed *de novo*. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).  This Court also reviews a district court's dismissal for failure to exhaust administrative remedies *de*

*novo*. *Rueda-Rojas v. United States*, 477 F. App'x 636, 637-38 (11th Cir. 2012); *see also Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (reviewing de novo whether a complaint was beyond the scope of an EEOC charge). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact and compels judgment as a matter of law. Fed. R. Civ. P. 56(a). This court "view[s] the evidence and draw[s] all reasonable inferences in favor of the party opposing summary judgment." *Malone v. U.S. Att'y Gen.*, 858 F. App'x. 296, 298-99 (11th Cir. 2021). "[T]o defeat a properly supported motion for summary judgment the plaintiff must present affirmative evidence sufficient for a jury to return a verdict in his favor." *Durr v. Sec'y of Veterans Affairs*, No. 21-12867, 2022 WL 2315086, at *2 (11th Cir. 2022) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). And "this Court may affirm the judgment of the district court on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir, 2012).

## SUMMARY OF THE ARGUMENT

The district court's rulings on summary judgment in favor of the Postal Service should be affirmed on appeal for multiple reasons. The Court should affirm the district court's entry of summary judgment as to Count I (Race Discrimination) and Count III (Age Discrimination) because no reasonable jury could find, based on this record, that the denial of full-time limited duty assignment was tainted by differential treatment based on race, sex, or age; Count II (Disability Discrimination) because Boyd has not shown a *prima facie* case of Disability Discrimination; and Count IV (Retaliation) because Boyd did not fully exhaust several of her retaliation claims and because Boyd cannot make out a *prima facie* case of retaliation.

## **ARGUMENT AND CITATIONS OF AUTHORITY**

**ISSUE I:**    **THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT FOR THE POSTAL SERVICE ON BOYD'S RACE, SEX, AND AGE DISCRIMINATION CLAIMS**

The district court properly granted the Postal Service's motion for summary judgment on Boyd's race, sex, and age discrimination claims.  On August 26, 2022, the district court held a hearing on the Postal Service's motion for summary judgment.  (ECF 36).  At the hearing, Boyd limited her race, sex, and age discrimination claim to the Postal Service's refusal to give her a limited duty work assignment from 2016 to the present (except for 1.5 hours per day she is now allowed to work).  (ECF 36)[2].  And yet Boyd references being disciplined, placed on Emergency Placement, and terminated in passing in the portion of her brief discussing race, sex, and age discrimination.  To the extent that Boyd is trying to resurrect her various race, sex, and age discrimination claims—other than being denied a full-time limited duty assignment—she waived those claims in the district court by limiting her challenged action to the Postal Service's decision not to give her a full-time limited duty work assignment. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (noting that an appellate court will not

---

[2] The district court's order  incorrectly uses the term "light -duty" instead of "limited duty."

consider "an issue not raised in the district court and raised for the first time in an appeal") (internal citations omitted).  Addressing issues "that [the district court] never had a chance to examine"— "particularly fact-bound issues"—would "waste judicial resources [and] deviate from the essential nature, purpose and competence of an appellate court." Id.  Boyd "'cannot readily complain about the entry of a summary judgment order that did not consider an argument [she] chose not to develop for the district court at the time of the summary judgment motions.''' *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (quoting *Johnson v. Bd. of Regents,* 263 F.3d 1234, 1264 (11th Cir. 2001)).  Having limited her race, sex, or age discrimination claim in the district court to the Postal Service's refusal to give her a full-time limited duty work assignment, she cannot now challenge other alleged adverse actions.  And even if she had not waived these claims in the district court, she abandoned them on appeal by not plainly and prominently raising them, but only mentioning them in a perfunctory manner.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11 th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing- references to it or raises it in a perfunctory manner without supporting arguments and authority.").  Accordingly, those claims cannot be considered on appeal.[3]

---

[3] In any event, even if not waived or abandoned, Boyd incorrectly states she was terminated when she was only issued a notice of termination, which is not an adverse action.  See *Lanza v. Postmaster Gen. of U.S.*, 570 F. App'x 236, 240 (3rd Cir. 2014) (finding that a notice of proposed removal is insufficient to constitute adverse action under Title VII); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001) ((An employment action is

To prevail on her only remaining race or sex-based Title VII discrimination claim or her age based ADEA discrimination claims, Boyd must show that (1) she suffered an adverse employment action and (2) discrimination impacted the making of the adverse employment decision[4]. *Babb v. Wilkie* (*Babb I*), 140 S. Ct. 1168, 1174 (2020); *Babb v. Secretary, Dep't of Veterans Affairs* (*Babb II*), 992 F.3d 1193 (11th Cir. 2021). In other words, Boyd must show that race, sex, or age- played a role in the Postal Service's process in refusing to give her a full-time limited duty work assignment. See *Buckley v. Sec'y of Army*, 97 F.4th 784 (11th Cir. 2024). Boyd did not offer any evidence to substantiate her claim that the Postal Service refused to give her a limited-duty work assignment from 2016 to the present (except for 1.5 hours per day she is now allowed to work) was based on race, sex, or age discrimination.

For Boyd's discrimination claim, the district court applied the Babb II causation standard. The court explained that with McDonnell Douglas not at issue, Boyd did not need to show a comparator "similarly situated in al material respects." (ECF 36 at 9) (citing *Lewis v. City of Union City* (*Lewis I*), 934 F.3d 1169, 1227

---

not an "adverse employment actin" if the employer rescinds it before the employee suffers any tangible harm. And other than being placed on Emergency Placement, Boyd fails to explain how any of the other discipline had a tangible effect on her employment affecting "things like terminations, demotions, suspensions without pay, and pay raises or cuts." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 8555, 860 (11th Cir. 2020). To the extent Emergency Placement would constitute an adverse action, this claim would fail for the same reason her claim that the Postal Service refused to give her a full-time limited duty work assignment does—she fails to establish similarly situated employees who were treated more favorably.

(11th Cir. 2019) (en banc)).  But, as the court discussed, Boyd merely asserted (which she continues to do on appeal) that multiple people who were white, male and/or younger than her were assigned to full-time limited duty tasks without developing any argument that any one of these was otherwise similarly situated to her.  (Id. at 8-9).  From this, the court correctly concluded that there was no evidence from which a jury could conclude that the refusal to provide a limited duty work assignment (except for 1.5 hours per day she is now allowed to work) was based on Boyd's race, sex. or age.  (Id. at 9).

On appeal, Boyd acknowledges that the court properly recognized McDonnell Douglas was not at issue, but argues the court erred by requiring that she show comparators "otherwise similarly situated to her."  Br. At 17-18.  But the Eleventh Circuit just recently reaffirmed that a federal sector employee under Title VII "may establish discriminatory intent through circumstantial evidence, including discriminatory comments, suspicious timing, arbitrariness in the employer's actions, pretext in the employer's rationale, better treatment of similarly situated, non-Black employees outside the protect group, and similar experiences by Black Employees.  *Bell v. Sec'y of Dep't of Veterans Affs*., No. 22-12698, 2024 WL 1462405, at *4 (11th Cir. Apr. 4, 2024) (emphasis added)[5] (citing *Lewis v. City of Union City* (Lewis

---

[5] Although not binding precedent, unpublished opinions of this Court may be cited as persuasive authority.  See 11th Cir. R. 36-2; *United States v. Almedina*, 686 F.3d 1312, 1316, n.1 (11th Cir. 2012)

II), 934 F.3d 1169, 1185-86 (11th Cir. 2019) *& Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321, 1328, 1341-46 (11th Cir. 2011)).  And Boyd has not alleged discriminatory comments, suspicious timing, arbitrariness in the Postal Service's actions, or pretext in the Postal Service's rationale.  Instead, Boyd continues to allege that she can identify similarly situated individuals who were treated more favorably, but again fails to provide any supporting details about how she is sufficiently similar to any of those individuals apart from race, sex, or age.  No reasonable jury could find, based on this record, that the denial of full-time limited duty assignment was tainted by differential treatment based on race, sex, or age.

**ISSUE II:** **THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT FOR THE POSTAL SERVICE ON BOYD'S DISABILITY DISCRIMINATION CLAIM**

The district court properly granted the Postal Service's summary judgment on Boyd's disability discrimination claim. The Rehabilitation Act prohibits federally-funded programs from discriminating against qualified individuals with a disability. *Durbrow v. Cobb Cnty. Sch. Dist.*, 887 F.3d 1182, 1186 n. 1 (11th Cir. 2018); 29 U.S.C. § 794(a))). "To establish a prima facie case of discrimination under the Rehabilitation Act or ADA, the Plaintiff must demonstrate that [s]he (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [her] disability." *Goldberg v. Fla. Int's Univ.*, 838 F. App'x 487, 492 (11th Cir. 2020). "A plaintiff may prove disability discrimination in two ways—disparate treatment or a failure to make a reasonable accommodation." *Porterfield v. Soc. Sec. Admin.*, No. 20-10538, 2021 WL 3856035, at *4 (11th Cir. Aug. 30, 2021). It is not disputed that Boyd had a disability, but she cannot establish that she was a "qualified individual."

1. Boyd cannot establish that she is a qualified individual.

Boyd cannot establish that she is a qualified individual under the Rehabilitation Act or the ADA. "The ADA prohibits an employer from discriminating against a "qualified individual on the basis of disability." *McCarroll v. Somerby of Mobile, LLC*, 595 F. App'x. 897, 899 (11th Cir. 2014) (quoting 42

23

U.S.C. § 12112(a)).  The first two elements necessary to demonstrate a *prima facie*

case of discrimination either on the basis of a disability or for failure to accommodate

requires that Boyd show that she: (1) is disabled; and (2) was a "qualified individual"

when she suffered the adverse action.  *Lucas v. W.W. Grainger, Inc.* 257 F.3d 1249,

1255 (11th Cir. 2001).  Additionally, to prevail on a failure to accommodate claim,

Boyd must demonstrate that she was denied a reasonable accommodation.  *Id.*  Boyd

cannot satisfy either prong.

> Boyd cannot establish that she was a "qualified individual" under the ADA:[6]
>
> The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8).  "The Court is to 'conduct a two-step inquiry' asking 'whether

plaintiff can perform the essential functions of the job' and, if she cannot, 'whether

any reasonable accommodation would allow her to do so.'"  *Perdue v. Alabama*

*Dept. of Pub. Safety,* No. 2:11-cv-1005, 2013 WL 4567010, *11 (M.D. Ala. Aug. 6,

---

[6] *Goldberg v. Fla. Int'l Uni.*, 838 F. App'x 487, 492 (11th Cir. 2020) ("Discrimination cases under the Rehabilitation Act and ADA are governed by the same standards."); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("The standard for determining liability under the Rehabilitation Act is the same as that under the Americans with Disabilities Act, 42 U.S.C. Section 12101, et. seq.")

2013) (quoting *Curry v. Secretary, Dept. of Veterans Affairs*, 2013 WL 2161791, at *4 (11th Cir. May 21, 2013))

One of Boyd's essential job functions is to deliver the mail. Boyd prepares the mail route for delivery. Once the route is prepared for delivery, Boyd loads her vehicle for delivery. To deliver the mail, Boyd must drive a Postal Service vehicle to deliver the mail on her assigned route. The Postal Service and Boyd agreed that an essential function of her position of delivering the mail is driving a mail truck to deliver the mail. (ECF 36). Boyd's position description of carrier technician also explains her essential job functions.

The Postal Service's consideration of what is an essential function is entitled to substantial weight. *See* 42 U.S.C. § 12111-(8) ("consideration shall be given to the employer's judgment as to what functions of a job are essential"); *Schwertfager v. City of Boyton Beach*, 42 F. Supp. 2d 1347, 1363 (S.D. Fla. 1999) ("An employer's identification of a position's "essential functions" must be given some deference under the ADA").

"An essential function is a fundamental job duty of a position and does not include marginal functions of the position." *Mason v. United Parcel Service Co. Inc.,* 674 F. Appx. 943, 951 (11th Cir. 2017). "[A] job function may be considered essential because the very reason the position exists is to perform that

function." *Vincent v. Wells Fargo Guard Services, Inc.*, 3 F.Supp.2d 1405, 1416 (S.D. Fla. 1998).

Boyd submitted Form CA-17s for her neck injury under OWCP case ending in 0987 to the Postal Service that she was subject to flare-ups of her neck problem such that she was not able to turn her head and that the flare-ups last a few days. Boyd also submitted a letter from Dr. Blecha regarding a November 1, 2019 office visit, that stated in part: "The follow [sic] restrictions are valid per her condition. Mrs. Boyd will require more time than usual to complete mail delivery route. She will have occasional flare-ups of her neck problem, such that she will not be able to turn her head and she will not be unable to drive during the time. Her flare-ups last a few days. She is unable to drive a postal vehicle [sic]. Boyd acknowledged that she cannot drive a mail truck when she has flareups of her neck. (*ECF 14-38 at 1*) (At worst, she would not be able to drive at all. (*ECF 14-4 at 1*) (ltr stating Boyd "is unable to drive a postal vehicle."). Lifting should be limited to Intermittent of 15 lbs." From the documentation that Boyd submitted to the Postal Service it is clear that Boyd has flare-ups of her neck problems such that she cannot turn her head and her own doctor states that she is unable to drive a postal vehicle.

2. Boyd cannot perform an essential function of her job as a carrier technician with a reasonable accommodation.

Boyd could not perform the essential function of her position, driving a postal vehicle, with or without a reasonable accommodation. "An accommodation can

qualify as 'reasonable,' and thus be required by the ADA, only if it enables the employee to perform the essential functions of the job." *Lucas,* 257 F.3d at 1255. The burden of identifying an accommodation and demonstrating that the accommodation allows her to perform the job's essential functions lies with Boyd. "A plaintiff does not satisfy her initial burden by simply naming a preferred accommodation -- even one mentioned in the statute or regulations; she must show that the accommodation is 'reasonable' given her situation." *Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir. 1998). Reasonable accommodations do not include assigning a worker to a position for which she is not qualified or creating a position specifically for the disabled worker. *Sutton v. Lader, 185* F.3d 1203, 1211 (11th Cir. 1999).

Boyd could not perform the essential functions of the position of carrier technician even with an accommodation. Boyd is subject to flare-ups of a neck problem where she is unable to turn her head. Boyd cannot and should not be driving postal vehicles. Boyd believes that she is able to drive a postal vehicle, which is contrary to her own doctor's statement that she is unable to do so. Boyd argued that she could perform her job most of the time, and the Postal Service could simply have someone else do it during the times her disability precluded her from driving. *(ECF* 36, Resp. at 22-23). But a reasonable accommodation is one that would allow someone with a disability to do the job. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365

(11th Cir. 2000) ("An accommodation is reasonable, and thus required under the ADA, only if it allows the employee to perform the essential functions of the job."). Boyd's requested accommodation is to have someone else do it when she cannot. (ECF 36).

Boyd could not show that driving a mail truck is not an essential function of her position. (ECF 36). Both parties agreed that the position requires driving a mail truck, and its no answer to say others could fill that role. *Mervyns, Inc*., at 1376 ("[W]e have stated that '[a]n employer is not required by the ADA to reallocate job duties in order to change the essential functions of a job.'" (quoting *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1528 (11th Cir. 1997)). The court correctly found that the Postal Service's decision to not allow Boyd to return to her full-time position was not disability discrimination.

There is no evidence that Boyd could perform this essential function of her position with or without a reasonable accommodation.

3. Boyd's failure to accommodate claim fails.

An employer unlawfully discriminates against a qualified person with a disability when it fails to provide a reasonable accommodation for the disability, unless doing so would impose an undue hardship on the employer. Boyd bears the burden of identifying an accommodation and showing that the accommodation

would allow her to perform the essential functions of the job in question. *Lucas* at 1255-56. Boyd cannot show that the Postal Service failed to accommodate her.

A reasonable accommodation is one that would allow the employee to perform the essential functions of the job. *Id.* However, "a plaintiff cannot establish a claim under the Rehabilitation Act alleging that the defendant discriminated against him by failing to provide a reasonable accommodation unless he demanded such an accommodation." *Gaston v. Bellingrath Gardens & Home, Inc*., 167 F.3d 1361, 1363 (11th Cir.1999). Though the Eleventh Circuit has not yet determined precisely what forms the request for accommodation must take, it still holds that "failure to make that specific demand is fatal to [a plaintiff's] claim. *Roddy v. City of Villa Rica, Ga.*, 536 F. App'x 995, 1000 (11th Cir. 2013) ("We need not address Roddy's claim that the City failed to provide him a reasonable accommodation by transferring him to an investigator position because Roddy did not establish that he made a specific demand for that accommodation, and the failure to make that specific demand is fatal to his claim."); *McCarroll v. Somerby of Mobile, LLC*, 595 F. App'x 897, 899 (11th Cir. 2014) ("[Plaintiff] did not establish any facts to show that he made a specific demand for an accommodation before his supervisors decided to fire him."). Boyd has the burden to identify an accommodation and establish that it is reasonable. *See Willis v. Conopco, Inc.,* 108 F.3d 282, 283 (11th Cir. 1997). "[A]n employer is not required to accommodate an employee in any

manner in which that employee desires." *Terrell*, 132 F.3 at 626 (quotations omitted). The employee "does not satisfy her initial burden by simply naming a preferred accommodation" because "she must show that the accommodation is 'reasonable' given her situation." *Id*. The Rehabilitation Act does not oblige employers to employ people who are not capable of performing the duties of the employment to which they aspire or to create alternative employment opportunities for a disabled person. *See Sutton,* 185 F.3d at 1211. The employer is not required to reassign the disabled employee if there is no vacant position, *see Lucas,* 257 F.3d at 1256-57*,* or to reallocate job duties to change the essential functions of a job, *see Earl v. Mervyns, Inc.,* 207 F.3d 1361, 1367 (11th Cir. 2000).

Still, "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Gaston,* 167 F.3d at 1363. "Where the employee fails to identify a reasonable accommodation, the employer has no affirmative duty to engage in an 'interactive process' or to show undue hardship." *Spears v. Creel*, 607 F. App'x 943, 948 (11th Cir. 2015).

Boyd claims that the only accommodation she asked for was to return to full duty because she could perform 97% of her job (Boyd claims that she has a lifting restriction that makes up the remaining 3% of her duties). The Postal Service accommodated Boyd's lifting restriction. Boyd's request to return to full duty is not a reasonable accommodation because an essential function of her position is to

drive a postal vehicle and her doctor specifically stated that Boyd is unable to drive a postal vehicle and that she has flare-ups of her neck problem where she is unable to turn her head.  The requested accommodation is *per se* unreasonable, and the Postal Service was under no duty to engage in any further interactive process before it denied the request.  *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016) ("An accommodation is only reasonable if it allows the disabled employee to perform the essential functions of the job in question."); see also *Kassa v. Synovus Fin. Corp.*, 800 F. App'x 804, 809 (11th Cir. 2020) ("When an employee fails to satisfy his burden of identifying an accommodation that would be reasonable, however, no liability attached to the employer for failing to engage in an "interactive process."); *McKane v. UBS Fin. Servs., Inc.*, 363 F. App'x 679, 681 (11th Cir. 2010) ("[A]n employer's failure to investigate does not relieve the plaintiff of the burden of proving the availability of a reasonable accommodation.").  Boyd has not shown that a reasonable accommodation exists.

To the extent the Postal Service was required to engage in an "interactive process," the Postal Service's District Reasonable Accommodation Committee (DRAC), which is used by the Postal Service to interact with employees to determine what accommodations can be made, attempted to do just that.  Boyd faults the Postal Service for failing to engage in the interactive process, Br. At 26-27, but she omits that she refused to meet with the DRAC.  Boyd has known about the DRAC since

31

2008. Boyd claimed that she did not participate in the DRAC since it was voluntary and that because she could perform 97% of her duties. The DRAC attempted to contact Boyd on several occasions. The DRAC sent Boyd a letter dated February 18, 2021, to get Boyd to participate in the interactive process; Boyd did not respond. The DRAC then sent Boyd another letter dated March 8, 2021, because Boyd had not responded to the February 18, DRAC letter; Boyd did not respond. The DRAC sent Boyd a third letter dated March 22, 2021. Boyd finally responded in a letter dated May 10, 2021, referencing the February 18, 2021, DRAC letter, stating in part, "I thank you for sending me the letters and application but I can perform ninety-seven (97%) of all of my duties." Boyd closed out her May 10, 2021, letter to the DRAC as follows: "Thank you for your letter, literature, and application that you send me that I did not request If I ever fill that I need DRAC I know how to request it." Boyd felt that she needed an accommodation for 3% of her duties because of a lifting restriction, the Postal Service accommodated Boyd's lifting restriction. Because Boyd refused to cooperate with the Postal Service's DRAC, she bears responsibility for "[a]ny failure in the interactive process." *Frazer-White v. Gee*, 818 F.3d 1249, 1257 (11th Cir. 2016).

Boyd did not and cannot proffer evidence sufficient to create a genuine issue of material fact in support of her claim that the Postal Service failed to provide a reasonable accommodation.

Furthermore, the district court noted an independent reason why the Postal Service is entitled to summary judgment on Boyd's disability discrimination claim. (ECF No. 36).  Although Boyd has evidence that her flareups were rare, she did not point to any evidence that she ever informed her supervisors that—or she could feel in advance when flareups would occur.  The medical documentation she provided was ambiguous and never clearly indicated how much driving she could do.  (See, e.g., ECF 14-38; ECF 14-39).  They also noted that Boyd's supervisors had asked her to obtain correctly filled-out medical evaluations, she never did.  (See ECF 14-7 para 5-6).  So if her requested accommodation was a substitute driver on rare occasions, she has not shown that she ever made that request with details about the rarity.

And to the extent that Boyd separately argues that the Postal Service refused a reasonable accommodation by not finding a substitute full-time position, that argument fails too.  Boyd did not point to evidence that she ever requested such an accommodation.  (ECF 36).  "[T]he initial burden of requesting an accommodation is on the employee.  Only after the employee has satisfied this burden and the employer fails to provide that accommodation can the employee prevail on a claim that her employer has discriminated against her."  *Gaston,* 167 at 1364; see also *Terrell, at* 626.  Rather than show she asked for a different position Boyd points to evidence that she asked to return to her full-time work arrangement, which, as

discussed, was per se unreasonable.  (ECF 36, ECF 14-3 at 11:3-12, 21:19-21). The court also found that Boyd had not shown that creating a new position would be a reasonable accommodation.  Employers are not required "to create a permanent light-duty position" for disabled employees. *Frazer-White v. Gee*, 818 F.3d 1249, 1256 (11th Cir. 2016).  As explained when the Postal Service District Reasonable Accommodation Committee attempted to contact Boyd to discuss what reasonable accommodations it could arrange for her, see ECF 14-29 at 1, Boyd declined a meeting and did not mention her flare-ups as a basis for seeking accommodation, see ECF 14-30 at 1-2.  Boyd argued at length that the Postal Service did more for other employees with disabilities and that they had the resources to do more for her. (ECF 36).  Even if that is so, the question is whether the Rehabilitation Act required more here, and Boyd has not shown that it did.  Because Boyd cannot establish a prima facie case of disability discrimination, her claim fails.  (ECF 36).

**ISSUE III:  THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT FOR THE POSTAL SERVICE ON BOYD"S RETALIATION CLAIMS**

A. Boyd failed to administratively exhaust several of her retaliation claims.

The Postal Service argued in the district court both exhaustion and merits arguments related to Boyd's retaliation claims.  (ECF 39).  In her brief, Boyd misleadingly asserts that the district court found her retaliation claims were properly before the court.  Br. At 27-28.   However, the district court did not separately address exhaustion because it found the Postal Service is entitled to summary judgment on the merits.  (ECF 42 at 4-5).  While the district court correctly concluded that Boyd's retaliation claim should be dismissed on the merits, several of her retaliation claims are time-barred and were not administratively exhausted. Therefore, this Court should affirm the dismissal of those claims for that reason alone.  See *Kernel Records*, 694 F.3 at 1309

After granting summary judgment to the Postal Service on Boyd's discrimination claims, the district court gave Boyd a second opportunity to file a notice laying out each adverse action upon which she based her retaliation claims. (ECF 36).  In compliance with the court's order, Boyd filed a notice enumerating the actions she deemed retaliatory.  (ECF 37).  Boyd included the following claims that she failed to administratively exhaust:

    (1)  on October 26, 2019, Waylon Morrison refused to complete a fact-finding and told Plaintiff that no limited duty assignments were available,

preventing Plaintiff from working and Defendant refused Plaintiff any assignments as of October 26, 2019 (*Id.*);

(2)  on November 14, 2019, Plaintiff was told that she would receive a 14-Day No Time-Off Suspension because of the October 22, 2019 incident (*Id.*);

(3)  on December 12, 2019, Plaintiff was denied entry to Centerville station where she needed to meet with union members (*Id.*);

(4)  Manager Matthew Staley threatened to call the police on Plaintiff (*Id.*);

(5)  retaliation claim that Plaintiff became physically ill because of harassment and verbal abuse, and Cobb demanded that she bring medical documentation (*Id.*); and,

(6)  Plaintiff was ordered from the station as soon as her shift ended and banned from entering any other post office in Tallahassee by the Postmaster (*Id.*).

(See ECF 37).

It is well established that a federal employee must exhaust administrative remedies before filing a claim for unlawful employment practices in federal district court. *Brown v. Snow*, 440 F.3d 1259, 1262 (11th Cir. 2006); *Grier v. Sec'y of the Army*, 799 F.2d 721, 724 (11th Cir. 1986); 29 C.F.R. Section 1614.101, et seq. The purpose of the exhaustion requirement is to give the federal agency an opportunity to investigate the alleged discriminatory practice. *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004). For that reason, claims brought in federal court are limited to those that reasonably can be expected to grow out of an administrative charge of

discrimination. *Id.* The proper inquiry is whether the excluded allegations grow out of the included charges is whether the judicial complaint is "like, or related to, or grew out of, the administrative allegations," and whether they "amplify, clarify, or more clearly focus" the properly filed charges. *Basel v. Sec'y of Defense*, 507 F. App'x. 873, 876 (11th Cir. 2013).

To initiate the administrative process, an employee must timely contact an EEO counselor and timely file a formal complaint. First, an employee must contact an EEO counselor from the employing agency within 45 days of the "matter alleged to be discriminatory" or in the case of personnel action, within 45 days of the "effective date" of the action. 29 C.F.R. § 1614.105(a)(1). Second, if the issue is not resolved, the EEO counselor notifies the employee of the right to file a formal complaint with the agency and the employee has 15 days from the date of receipt to file a formal EEO complaint. *Id.* § 1614.105(d). Thereafter, the agency will investigate the complaint and issue a final agency decision. The employee can appeal the final agency decision within 30 days of receipt, 29 C.F.R. § 1614.402, or file a civil action in federal district court within 90 days of receipt if no appeal is filed, 29 C.F.R. § 1614.407.

Once the Defendant contests the issue of administrative exhaustion, as here, Plaintiff must establish that he timely met the filing and exhaustion requirements. *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233 (11th Cir. 2002). Each specific

allegation of discrimination and retaliation must be reported to an EEO counselor within 45 days of the specific allegation. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."); see also *Abram v. Fulton Cty*., Gov't, 598 F. App'x 672, 676 (11th Cir. 2015); *Terhume v. Potter*, No. 8:08-CV-1218-T-23MAP, 2009 WL 2382281, at *4 (M.D. Fla. July 31, 2009) ("Individual acts of retaliation that form the basis of retaliation claims….are included within the Supreme Court's list of discrete discriminatory acts, and therefore any claim stemming from those aces must be administratively exhausted.") (internal citations omitted).  If the federal employee fails to initiate the EEO process within the 45-day window, the claim is barred for failure to exhaust administrative remedies. *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008). Failure to exhaust administrative remedies can only be excused in extraordinary cases where plaintiff can show "a good faith effort to comply with regulations coupled with detrimental reliance on false information from the defendant." *Twitty v. Potter*, No. 4:07CV107-SPM/WCS, 2008 WL 2277528, at *3 (N.D. Fla. May 30, 2008).  Boyd cannot meet this burden for several of her retaliation claims.[7]

---

[7] To the extent Boyd intends to argue that the continuing violation doctrine salvages the untimely portions of her retaliation claim, as she did below, this argument fails because retaliation claims are "discrete discriminatory acts[s]" to which the continuing violation doctrine does not appley.  See, e.g., *Abram v. Fulton Cnty. Gov't*., 598 F. App'x 672 (11th Cir. 2015)("The district court correctly concluded that the continuing violations doctrine was inapplicable in this case because [the plaintiff] did not raise a hostile-work environment claim…"); *Riccard v. Prudential Ins. Co*., 307 F.3d 1277, 1291-92 (11th Cir. 2002) (finding that retaliatory acts are discrete discriminatory acts not subject to a continuing violation theory).  The continuing violation doctrine does not apply here.

1. <u>Boyd raised the claim in her lawsuit that she was subjected to retaliation on August 29, 2019, however, Boyd never made this claim in her EEO Administrative Complaint.</u>

Boyd contacted the EEO office on October 25, 2019.  (ECF 38-6 EEO Dispute Resolution Specialist Inquiry Report). The August 29, 2019, incident when Boyd was placed on Emergency Placement that Boyd claims was retaliation occurred more than 45 days before the October 25, 2019, EEO contact. Forty-five days prior to October 25, 2019, is September 10, 2019. Hence, all claims that arose prior to September 10, 2019, are time barred, and Boyd's August 29, 2019, claim is not properly before the Court and must be dismissed for failure to exhaust.

2. <u>Boyd raised the claim in her lawsuit that she was subjected to retaliation on October 22, 2019, however, Boyd never raised this claim in her EEO Administrative Complaint.</u>

Boyd never raised the claim that she was subjected to retaliation on October 22, 2019, when placed on Emergency Placement in her EEO Administrative Complaint.  (ECF 38-5 Acknowledgement of 6th Amendment to Complaint; ECF 38-6 Dispute Resolution Specialist Inq. Report; ECF 38-11 Plaintiff's EEO Complaint of Discrimination). Although Boyd amended her EEO Complaint multiple times, Boyd never included the October 22, 2019 incident as a retaliation claim. (ECF 38-5 Acknowledgement of 6th Amendment to Complaint).  Boyd's claim that she was subjected to retaliation on October 22, 2019, was never accepted for investigation. (Id.). Because it has been more than 45 days after the occurrence,

this claim is untimely and therefore not properly before the Court and must be dismissed for failure to exhaust.

### 3. Boyd never raised the claim in her EEO Administrative Complaint that she was subjected to retaliation on October 26, 2019.

Boyd never raised the claim that she was subjected to retaliation on October 26, 2019, in her EEO Administrative Complaint. (Id.; Ex.38-6 EEO Dispute Resolution Specialist Inquiry Report; ECF 38-11 Plaintiff's EEO Complaint of Discrimination). Although Boyd amended her EEO Complaint multiple times, Boyd never included the October 26, 2019 incident as a retaliation claim. (Id). Boyd's claim that she was subjected to retaliation on October 26, 2019, was never accepted for investigation. (ECF 38-5 Acknowledgement of 6th Amendment to Complaint). Because it has been more than 45 days after the occurrence, this claim is untimely and therefore not properly before the Court and must be dismissed for failure to exhaust.

### 4. Boyd never raised the claim in her EEO Administrative Complaint that she was subjected to retaliation on November 14, 2019.

Boyd never raised the claim that she was subjected to retaliation on November 14, 2019, when she was issued a Notice of a 14-Day No Time-Off Suspension, in her EEO Administrative Complaint. (ECF 38-5 Acknowledgement of 6th Amendment to Complaint). Although Boyd amended her EEO Complaint multiple times, Boyd never included the November 14, 2019 Notice as a retaliation claim.

40

(Id.). Boyd's claim that she was subjected to retaliation on November 14, 2019, was never accepted for investigation. (Id.). Because it has been more than 45 days after the occurrence, this claim is untimely and therefore not properly before the Court and must be dismissed for failure to exhaust.

### 5. Boyd never raised the claim in her EEO Administrative Complaint that she was subjected to retaliation on December 12, 2019.

Boyd never raised the claim that she was subjected to retaliation on December 12, 2019, when denied entry to Centerville station in her EEO Administrative Complaint. (ECF 38-5 Acknowledgement of 6th Amendment to Complaint; ECF 38-6 EEO Dispute Resolution Specialist Inquiry Report; ECF 38-11 Plaintiff's EEO Complaint of Discrimination). Although Boyd amended her EEO Complaint multiple times, Boyd never included the December 12, 2019, incident as a retaliation claim. (Id). Boyd's claim that she was subjected to retaliation on December 12, 2019, was never accepted for investigation. (ECF 38-5 Acknowledgement of 6th Amendment to Complaint). Because it has been more than 45 days after the occurrence, this claim is untimely and therefore not properly before the Court and must be dismissed for failure to exhaust.

### 6. Boyd never raised the claim that Matthew Staley retaliated against her by threatening to call the police on her in her EEO Administrative Complaint.

Boyd never raised the claim that she was subjected to retaliation when Matthew Staley threatened to call the police on her in her EEO Administrative

Complaint. (ECF 38-5 Acknowledgement of 6th Amendment to Complaint; ECF 38-6 EEO Dispute Resolution Specialist Inquiry Report; ECF 38-11 Plaintiff's EEO Complaint of Discrimination). Although Boyd amended her EEO Complaint multiple times, Boyd never included the claim that Matthew Staley threatened to call the police on her as a retaliation claim. (ECF 38-5 Acknowledgement of 6th Amendment to Complaint). This claim was never accepted for investigation. (Id). Because it has been more than 45 days after the occurrence, this claim is untimely and therefore not properly before the Court and must be dismissed for failure to exhaust.

7. <u>Boyd never claimed in her EEO Administrative Complaint that she was subjected to retaliation when she allegedly became physically ill because of harassment and verbal abuse and Cobb demanded that she bring medical documentation before returning to work.</u>

Boyd never raised the claim that she was subject to retaliation when she became physically ill because of the harassment and verbal abuse, and Cobb demanded that she bring medical documentation before returning to work in her EEO Administrative Complaint. (ECF 38-5 Acknowledgement of 6th Amendment to Complaint; ECF 38-6 EEO Dispute Resolution Specialist Inquiry Report; ECF 38-11 Plaintiff's EEO Complaint of Discrimination). Although Boyd amended her EEO Complaint multiple times, Boyd never included this as a retaliation claim. (ECF 38-5 Acknowledgment of 6th Amendment to Complaint). This claim was never accepted for investigation as a retaliation claim. (Id). Because it has been more than

45 days after the occurrence, this claim is untimely and therefore not properly before the Court and must be dismissed for failure to exhaust.

8. Boyd never raised in her EEO Administrative Complaint that she was subjected to retaliation when (on unspecified date(s)) she was allegedly "ordered from the station as soon as her shift ended," that she was "banned from entering any other post office in Tallahassee" by the Postmaster.

Boyd never raised the claims as retaliation that she was allegedly "ordered from the station as soon as her shift ended" and that she was "banned from entering any other post office in Tallahassee" by the Postmaster, in her EEO Administrative Complaint. (ECF 38-5 Acknowledgement of 6th Amendment to Complaint; ECF 38-6 EEO Dispute Resolution Specialist Inquiry Report; ECF 38-11 Plaintiff's EEO Complaint of Discrimination). Although Boyd amended her EEO Complaint multiple times, Boyd never included this as a retaliation claim. (ECF 38-5 Acknowledgement of 6th Amendment to Complaint). This claim was never accepted for investigation as a retaliation claim. (Id.). Because it has been more than 45 days after the occurrence, this claim is untimely and therefore not properly before the Court and must be dismissed for failure to exhaust.

Because Boyd failed to administratively exhaust the aforementioned eight claims they should be dismissed for that reason alone.

B. Boyd was not subject to retaliation.

As discussed, the Postal Service argued below that several of Boyd's

retaliation claims should be dismissed for failure to exhaust, and the remaining ones should be dismissed on the merits. The district court declined to address the Postal Service's exhaustion arguments, but instead correctly found each retaliation claim failed on the merits because Boyd cannot establish a *prima facie* case of retaliation. (ECF 42).

To succeed on a Title VII retaliation claim, Boyd must present evidence of (1) her protected expression; (2) an adverse employment action; and (3) a causal connection between the two. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). For causation, federal-sector retaliation claims require showing that retaliation "play[ed] a part" in the personnel action. *See Babb I,* 140 S. Ct. at 1174 n.3 (describing standard for federal-employee Title VII discrimination claim); *Tonkyro v. Sec'y, Dep't of Veteran Affs.*, 995 F.3d 828, 833-35 (11th Cir. 2021) (applying *Babb's* more lenient causation standard to federal-sector retaliation claims). To establish an adverse action for retaliation, Plaintiff must establish that "'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Miller-Godwin v. City of Panama City Beach, Fla.*, 385 F. App'x 966, 974 (11th Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "To establish a causal connection, a Plaintiff must show that the decision-makers were aware of the

44

protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002). However, it is well established that "[i]f a decisionmaker does not know about an individual's protected conduct, then [he] cannot act in retaliation based on that conduct." *Durr II*, 2022 WL 2315086, at *2. Thus, "'a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action.'" *Duncan v. Alabama,* 734 F. App'x 637, 641 (11th Cir. 2018) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999)). Boyd cannot establish a *prima facie* case of retaliation.

1.    Boyd's August 29, 2019 retaliation allegation.

As discussed *supra*, Boyd's August 29, 2019, retaliation claim is time-barred.  But on the merits, Boyd cannot even make out a prima facie case concerning the August 29, 2019, incident where she was placed on Emergency Placement.  Boyd does not identify what statutory protected activity she engaged in prior to the August 29, 2019 incident, or when she engaged in such activity.  Nor has Boyd established that the decision maker Supervisor Waylon Morrison was aware of her statutorily protected activity that she engaged in prior to August 29, 2019.  Boyd's initial EEO contact on October 25, 2019 could not have played a role in her August 2019 Emergency Placement since the August 2019 Emergency Placement came earlier.  See *Debe v. State Farm Mut. Auto. Ins. Co*., 860 F. App'x 637, 640 (11 th Cir. 2021) ("I[]f the

45

alleged retaliatory conduct occurred before the employee engaged in protected activity, the two events cannot be causally connected."); *EEO v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). Boyd has not cited to any evidence tying any earlier complaints she may have made to this action. Thus, this claim fails.

2. Boyd's October 22, 2019 retaliation allegation.

As discussed *supra,* the October 22, 2019, incident is time-barred, since Boyd never raised this incident as retaliation in her EEO Administrative Complaint. Boyd raised for the first time in her Federal Complaint the October 22, 2019, Emergency Placement incident as retaliation. On the merits, this claim fails for multiple reasons.

As a threshold matter, Boyd cannot make out a prima facie case on this claim. Boyd has not shown what statutorily protected activity she engaged in prior to October 22, 2019, or when she engaged in such activity that resulted in this incident being retaliation. Boyd contacted an EEO Counselor on October 25, 2019, three days after the October 22, 2019 Emergency Placement, and at that time never claimed that this incident was retaliation. Boyd has not shown that the decision maker Supervisor Waylon Morrison was aware of her statutorily protected activity that she engaged in prior to October 22, 2019.

The facts underlying this incident establish that Boyd was put on Emergency Placement because of her intimidating, disrespectful, and insubordinate behavior,

46

not as a result of any retaliation. On the morning of October 22, 2019, Boyd had been argumentative with management and was not following instructions and was telling carriers to ask to speak to their union steward, interfering with route examiners, and telling carriers to request union time. (ECF 38-3 Morrison Declaration). Later that morning, Boyd submitted information requests to her supervisor Morrison to sign. (Id.). Boyd later approached Morrison to get the information requests. (Id.). Morrison informed Boyd that he was in the middle of something and that he would get the information requests back to her before he left. (Id.). Boyd loudly said "y'all are playing games just give them back to me being that you are refusing to sign them." (Id.). Later while Morrison was seated at his desk, Boyd walked up behind him and tried to take the information requests off of Morrison's desk without permission. (Id.). Morrison immediately put his hand on the information requests and told Boyd to not take anything off of his desk. Boyd clenched her teeth, saying "these are mine." (Id.). Morrison felt threatened and unsure of Boyd's immediate actions. (Id.). Morrison then placed Boyd on Emergency Placement status for exhibiting threatening behavior and insubordination. (Id.; Ex38-7 October 22, 2019 off-duty Emergency Placement; ECF 38-8 Reason for Emergency Placement). Morrison told Boyd to gather her things and leave.

47

Wesley T. Fiveash, a Postmaster, was at Lake Jackson Station on October 22, 2019, participating in a route inspection.  (ECF 38-13 Fiveash Statement). Fiveash observed Boyd on the work room floor speaking to management where she seemed very upset and several times being loud and threatening in her tone. (Id.). Fiveash also observed Boyd following Supervisor Morrison and observed Boyd and Morrison having loud outbursts. (Id.). Fiveash observed that the station manager and supervisors tried several times to calm Boyd down, unsuccessfully. (Id.). Fiveash also heard Boyd yell at the station manager that she can do whatever she wants when she is on union time because she is his equal and that he could not tell her what to do. (Id.). Manager of Post Office Operations, Michelle Kulik, was also participating in the route inspection on October 22, at Lake Jackson Station. (ECF 38-14 Kulik Statement). Kulik observed Boyd get boisterous several times and observed that Boyd seemed to be harassing one of the supervisors and station manager. (Id.). Kulik also observed the manager and supervisors trying to deescalate Boyd's behavior. (Id.).  Boyd's conduct was intimidating, disrespectful, and insubordinate. As a result, Morrison placed Boyd on Emergency Placement. These facts do not support a finding of retaliation.

3.    Boyd's October 26, 2019 retaliation allegation.

As discussed *supra*, Boyd's claim that she was subjected to retaliation on October 26, 2019, when she was told that there were no limited duty assignments is

time-barred. Boyd claimed in her EEO Administrative case that she was subjected to race, color, sex, and age discrimination—not retaliation—on October 26, 2019, and continuing when she was denied reasonable accommodation when management denied her the opportunity to work. (ECF 38-5 Acknowledgement of 6th Amendment to Complaint).

On August 23, 2019, November 1, 2019, and February 12, 2020, Boyd, a carrier technician submitted documents to management that stated in part that she was subject to have flare-ups of her neck problem such that she will be unable to turn her head. (ECF 38-23 August 23, 2019 Duty Status Report; Ex.38-15 November 1, 2019 Letter from Dr. Blecha; and Ex.38-24 February 12, 2020 Duty Status Report). Boyd also submitted documents to management that stated in part that she is unable to drive a postal vehicle. (Id.). As a carrier technician, Boyd has to drive a postal vehicle to perform her duties. (ECF 38-1 Plaintiff's Depo P127 L10-13; ECF 38-3 Morrison Declaration). Boyd never asked for a reasonable accommodation. By Boyd's own admission, she asked to be returned to full duty; however, that was not possible based on the documentation that she submitted concerning her neck problems and her own doctor stating that she was unable to drive a postal vehicle. Boyd went on OWCP leave from on or around October 26, 2019 to February 11, 2020. (ECF 38-1 Plaintiff's Depo P197 L10-25; ECF 38-3 Morrison Declaration). Boyd has not shown that the decision maker Supervisor Waylon

Morrison was aware of her EEO contact that occurred the day before on October 25, 2019. There is simply no evidence that Morrison had knowledge of Boyd's October 25, 2019, EEO contact.

4.    Boyd's November 14, 2019 retaliation allegation.

As discussed *supra* the November 14, 2019, 14-Day No Time-Off Suspension is time-barred because Boyd never raised this claim in her EEO Administrative Complaint as retaliation. She now raises it for the first time as alleged retaliation. Boyd cannot make out a *prima facie* case with this claim as the November 14, 2019 Notice of 14-Day No Time-off Suspension is not an adverse action. *Davis v. Legal Svcs. of Alabama, Inc.*, 19 F.4th 1261, 1266-67 (11th Cir. 2021) (A simple paid suspension alone is not an adverse employment action.). This November Notice that Boyd received was based on her conduct that resulted in her being placed on Emergency Placement on October 22, 2019. Boyd has not shown that her initial EEO contact played a part in the November 14, 2019 no-time off suspension.  Even though this occurred shortly after her October 25, 2019 EEO contact Boyd has not shown that her supervisors were then aware she had made contact.

5.    Boyd's February 11, 2020 retaliation allegation.

Boyd cannot make out a *prima facie* case of retaliation on her claim that on February 11, 2020, Morrison refused Boyd a full-time limited duty assignment, and

instead, only offered Boyd a limited duty assignment for 1.5 hours per day. First, there is no causal link as the February 11, 2020, allegation is more than three months after Boyd's initial EEO contact of October 25, 2019. A gap of three to four months between a protected activity and alleged adverse action is too lengthy to establish causation based on temporal proximity alone. See *Thomas,* 506 F.3d at 1364. Additionally, the February 11, 2020, incident occurred before Boyd filed her Formal EEO Complaint on February 14, 2020. Boyd cannot establish a causal link between her statutorily protected activity of October 25, 2019 and February 14, 2020 with the February 11, 2020 incident.

6.    <u>Boyd's May 15, 2020 retaliation allegation.</u>

Boyd cannot make out a *prima facie* case of retaliation with her allegation that on May 15, 2020, Paul Steele verbally abused and harassed her while she was off the clock. On May 15, 2020, Boyd while off duty was interfering with traffic in the customer parking lot at the Lake Jackson Postal Station while she was talking to her daughter, this was observed by Postal Service employee Brian Wolfgeher. (ECF 38-16 Brian Wolfgeher Statement). Wolfgeher called Manager of Post Office Operations Steele and told him what he saw. (Id.). Steele confronted Boyd with Wolfgeher on the phone; Boyd told Steele to leave her alone because she was off the clock. Wolfgeher heard Boyd tell Steele to shut up. (Id.). These events do not constitute an adverse action because Boyd was not disciplined for how she spoke to

Steele; she suffered no negative consequences whatsoever. See *Rainey v. Holder*, 412 F. App'x 235, 238 (11th Cir. 2011) (explaining that "petty and trivial" actions by the defendant are not sufficiently adverse to establish a retaliation claim under Title VII). Additionally, there was no causal link since this incident was three months after Boyd filed her formal EEO Complaint of February 14, 2020 (it was over six months after her initial EEO contact of October 25, 2019). For each of these reasons, this claim fails on the merits.

7.    Boyd's May 21, 2020 and May 22, 2020 retaliation allegation.

Boyd cannot make out a *prima facie* case of retaliation with her allegation that on May 21, 2020, she was subjected to verbal abuse and harassment, screaming at her about where she parked her vehicle. On May 21, 2020, Boyd was parked in the customer parking lot at Lake Jackson Postal Station. (ECF 38-17 Cobb Statement; ECF 38-18 Rattley Statement; ECF 38-22 Steele Statement). During a power outage, Acting Station Manager Vanessa Cobb asked Boyd where she had parked her car; Plaintiff responded that it was none of Cobb's business. (Id.). Acting Station Manager Sammayya Rattley walked over to where Boyd and Cobb were located because she saw that Boyd seemed agitated; Paul Steele was nearby. (ECF 38-18 Rattley Statement; ECF 38-22 Steele Statement). Cobb gave Boyd a direct order to move her car from the customer parking lot to the employee lot. (Id.; ECF 38-17 Cobb Statement). Boyd shouted that Cobb could not tell her what to do and that she

was not moving her car. (Id.). Boyd was waving her hands all over the place then walked between Cobb and Rattley and said that they couldn't tell her where to park or what to do.  (Id.). Boyd began shouting about leaving and started mumbling and headed into the unit.  Boyd stated that she was going home. Cobb informed Boyd that if she left she would be abandoning her position and would be AWOL; Boyd stated that she did not care. (Id.). Boyd was told to provide medical documentation. Boyd left after her conversation with Cobb. Upon Boyd's return to work on May 22, Boyd was placed on Emergency Placement for her actions of May 21. *(Id.)*. This incident of May 21, 2020 occurred more than three months after Boyd filed her formal EEO Complaint. Even though Cobb was involved in an EEO case in 2017, there is no evidence that Cobb was aware of Boyd's most recent EEO activity of October 25, 2019 and February 14, 2020.  Boyd does not show that any of her previous EEO contact played a role in her May 2020 interactions with Cobb.

### 8.    Boyd's July 8, 2020 retaliation allegation.

Boyd cannot make out a *prima facie* case of retaliation based upon her claim that on July 8, 2020, she received a notice of removal for the May 21, 2020, incident. Not all employer actions that negatively impact an employee qualify as adverse employment actions.  *Howard v. Walgreen Co.*, 605 F.3d 1239, 1245 (11th Cir. 2010). The Notice of Removal did not alter Boyd's compensation, terms, conditions, or privileges of employment, deprived her of employment opportunities,

or adversely affected her status as an employee. See *Lanza v. Postmaster Gen. of U.S.*, 570 F. App'x 236, 240 (3rd Cir. 2014) (finding that a notice of proposed removal is insufficient to constitute adverse action under Title VII); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001) (An employment action is not an "adverse employment action" if the employer rescinds it before the employee suffers any tangible harm. Boyd continues to be employed with the United States Postal Service.

9.    Boyd's undated retaliation allegations.

Boyd also includes other undated allegations of retaliation that are time-barred and do not support a claim of retaliation.

First, Boyd's undated claim that Matthew Staley threatened to call the police on her is time-barred. On the merits, Boyd cannot make out a *prima facie* case for this retaliation allegation. Boyd has not identified what statutorily protected activity she engaged in before Staley threatened to call the police on her. Nor has Boyd established that Staley was aware of her statutorily protected activity. Furthermore, there is no evidence Boyd was subjected to an adverse employment action as a result of this incident.

Second, Boyd claims that she was subjected to retaliation when she was "ordered from the station as soon as her shift ended" and that she "was banned from entering any other post office in Tallahassee" by the Postmaster. (ECF 37.) This

54

claim is time-barred as discussed *supra*. Additionally, Boyd cannot make out a *prima facie* case with these claims. Boyd does not identify when the incidents happened or the circumstances surrounding these alleged incidents. Boyd also does not identify what statutorily protected activity she engaged in prior to these alleged instances. Boyd has not shown what adverse action she suffered by being ordered to leave the station after her shift ended. Nor has Boyd identified an adverse action that she suffered from an alleged ban by the Postmaster.

The district court properly found that Boyd has not shown evidence from which a reasonable jury could conclude her protected expressions played a role in any of her asserted personnel actions.

## <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that this Court affirm the judgment of the District Court in full.

Respectfully submitted,

JASON R. COODY
United States Attorney

*/s/ Herbert S. Lindsey*
**HERBERT S. LINDSEY**
Assistant United States Attorney
Texas Bar No. 00784476
111 North Adams Street, 4th Floor
Tallahassee, FL  32301
Telephone:  850-942-8430
Fax:  850-942-8466
Email:  herbert.lindsey@usdoj.gov
Counsel for Defendant/Appellee

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)(7)

I certify that this brief complies with the type-volume limitation set forth in F.R.A.P. 32(a)(7).  This brief contains 13,333 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that one (1) copy of the foregoing has been mailed, postage paid, to Marie Mattox, Counsel for Appellant, on this 19th day of April , 2024.  On that same date, this brief was electronically filed with the Court.

*/s/ Herbert S. Lindsey*
**HERBERT S. LINDSEY**
Assistant United States Attorney
Counsel for Defendant/Appellee

56